**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| IOT INNOVATIONS LLC,<br>Plaintiff,<br>v.<br>SIGNIFY NETHERLANDS B.V. and SIGNIFY N.V.,<br>Defendants. | Civil Action No. 2:26-cv-00736<br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff IoT Innovations LLC ("IoT Innovations" or "Plaintiff") files this Complaint against Signify N.V. and Signify Netherlands B.V. (collectively, "Defendants" or "Signify"), alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1. This is a patent infringement action to stop Defendants' infringement of the following United States Patents (the "Asserted Patents") issued by the United States Patent and Trademark Office ("USPTO"), copies of which are available, respectively, at the links below:

| | U.S. Patent No. | Title | Available At |
|---|---|---|---|
| A. | 7,209,876 | System and Method for Automated Answering of Natural Language Questions and Queries | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7209876 |
| B. | 7,280,830 | Automatic Registration Services Provided Through A Home Relationship Established Between A Device And A Local Area Network | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7280830. |

| | U.S. Patent No. | Title | Available At |
|---|---|---|---|
| C. | 7,593,428 | Apparatus, and Associated Method for Forming, and Operating Upon, Multiple-Checksum-Protected Data Packet | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7593428 |
| D. | 8,972,576 | Establishing A Home Relationship Between a Wireless Device and a Server in A Wireless Network | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8972576 |
| E. | 7,246,173 | Method And Apparatus For Classifying IP Data | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7246173 |
| F. | RE44,742 | Dynamic Message Templates And Messaging Macros | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/RE44742 |

2. IoT Innovations seeks injunctive relief and monetary damages.

**PARTIES**

3. IoT Innovations is a limited liability company formed under the laws of Texas with a registered office address located in Austin, Texas (Travis County).

4. Upon information and belief, Defendant Signify N.V. is a multinational corporation organized under the laws of the Netherlands with its principal place of business located at High Tech Campus 48, 5656 AE Eindhoven, The Netherlands.

5. Upon information and belief, Signify N.V. is the parent company in the Signify corporate family, and its controlled subsidiaries including but not limited to Signify Netherlands B.V.

6. Upon information and belief, Signify Netherlands B.V. (formerly known as Philips Lighting Holding B.V.) is a corporation organized and existing under the laws of the Netherlands with its registered office at High Tech Campus 48, 5656 AE Eindhoven, The Netherlands.

7. Upon information and belief, Defendants own, operate, advertise, and/or control at least the websites http://signify.com, http://philips-hue.com, and http://wizconnected.com (and related domains), through which they advertise, sell, offer to sell, provide, and/or educate customers about their products and services, including the Accused Products.

## JURISDICTION AND VENUE

8. IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

9. This is an action for infringement of United States patents arising under 35 U.S.C. §§ 271, 281, and 284–85, among others. This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

10. This Court has personal jurisdiction over Defendants pursuant to due process and/or the Texas Long Arm Statute because, inter alia, (i) Defendants have done and continue to do business in the United States, including in the State of Texas; (ii) Defendants have committed and continue to commit acts of patent infringement in the United States, including in the State of Texas, including making, using, offering to sell, and/or selling accused products in the United States and Texas, and/or importing accused products into the United States and Texas, including by Internet sales and sales via retail and wholesale stores, inducing others to commit acts of patent infringement in the United States and Texas, and/or committing at least a portion of any other infringements alleged herein.

11. In addition, or in the alternative, this Court has personal jurisdiction over Defendants pursuant to Fed. R. Civ. P. 4(k)(2).

12. Venue is proper in this District under 28 U.S.C. § 1391(c)(3) because Defendants do not reside in any judicial district in the United States.

13. Defendants have purposefully availed themselves of the privilege of conducting activities in this state and this District, including at least part of the infringing activities alleged herein. Defendants directly and through their controlled subsidiaries regularly do or solicit business, engage in other persistent conduct targeting residents of Texas, and/or derive substantial revenue from infringing goods offered for sale, sold, and imported to Texas and Texas residents.

14. Defendants place, have placed, and contributed to placing their products into the stream of commerce through established distribution channels knowing or understanding that such products would be sold and used in the United States, including in this District. Defendants provide cloud services—including provisioning the Philips Hue App, Hue Bridge, and associated real-time event notification services delivered via the EventStream API—and the WiZ App, and are the data controllers of data stored in the Hue Cloud, per the applicable Data Privacy Notice, to residents of the State of Texas.

15. On Defendants' U.S.-directed website, SIGNIFY.COM, https://www.signify.com/en-us, Defendants state that hi. "Signify is the world leader in lighting" and "enhances public spaces, work places, and homes."

16. Defendants operate "in many countries through its subsidiaries and affiliated companies as well as via a limited number of branch offices, which primarily act under the Signify trade name." *See* Signify Annual Report 2025, SIGNIFY.COM, https://www.signify.com/static/2025/signify-annual-report-2025.pdf, at 144.

17. The 2025 Annual Plan released by Signify describes Defendants as having "a global presence in 71 markets with around 26,600 employees." *Id.* at 13. Its accompanying map shows that 27% of Defendants' employees are in the Americas, which includes the United States. *Id.*

18. In 2025, Defendants' United States sales totaled approximately €1,999 million; in the

United States, Defendants held tangible and intangible assets worth approximately €2,241million. *Id.* at 177.

19. Defendants offer products bearing several brands, among them Philips, Hue, and WiZ. The Philips Hue U.S. website at www.philips-hue.com/en-us/about-us states: "Philips is Signify's primary brand for lamps, luminaires, and other lighting products for both professionals and consumers. Signify products carrying the Philips brand cover the complete range of lighting applications, from home, office, and industry to street lighting, horticulture, sports, and more." The Global Brands page on Defendants' www.signify.com/global/brands website identifies Philips, Hue, and WiZ as Signify's "Global Brands."

20. Within the Signify corporate family, Signify N.V. serves as the parent company and is the ultimate parent company of the Signify group. *See* Annual Report 2025, SIGNIFY.COM, https://www.signify.com/static/2025/signify-annual-report-2025.pdf, at 185.

21. This Court has personal jurisdiction over Defendant Signify N.V. because it: (a) directly and through directing its controlled subsidiaries conducts business, has committed acts of patent infringement, and has induced acts of patent infringement by others in this District and elsewhere in the United States; (b) purposefully availed itself of the privilege of conducting activities in this state and this District; (c) directly and through directing its controlled subsidiaries regularly does or solicits business, engages in other persistent conduct targeting residents of Texas, and/or derives substantial revenue from infringing goods offered for sale, sold, and imported to Texas and Texas residents; (d) places, has placed, and contributed to placing its products into the stream of commerce through established distribution channels knowing or understanding that such products would be sold and used in the United States, including in this District; and (e) identifies itself as the manufacturer of several of the Accused Products.

22. Signify N.V. has committed acts of direct and/or indirect patent infringement in this District, in Texas, and throughout the United States, giving rise to this action. As such, Signify N.V. has sufficient minimum contacts with Texas such that personal jurisdiction over Signify N.V. does not offend traditional notions of fair play and substantial justice.

23. Upon information and belief, Defendant Signify N.V. identifies itself as the manufacturer of several of the Accused Products, including but not limited to the Philips Hue Bridge, https://www.assets.signify.com/is/content/PhilipsLighting/Assets/signify/global/20211013-Philips-Hue-bridge.pdf (identified as "Manufacturer: Signify" at 5600 VB Eindhoven, The Netherlands in its Declaration of Conformity), the Philips Hue Dimmer Switch, https://images.philips.com/is/content/PhilipsConsumer/PDFDownloads/Global/20190823-Philips-Hue-dimmer-switch.pdf (identified as "Manufacturer: Signify" at 5600 VB Eindhoven, The Netherlands in its Declaration of Conformity), the Philips Hue Motion Sensor, https://images.philips.com/is/content/PhilipsConsumer/PDFDownloads/Global/20190823-Philips-Hue-Motion-sensor.pdf (identified as "Manufacturer: Signify" at 5600 VB Eindhoven, The Netherlands in its Declaration of Conformity), the Philips Hue Smart Plug, https://www.assets.signify.com/is/content/PhilipsLighting/Assets/signify/global/20211028-Philips-Hue-Smart-Plug-V2.pdf (identified as "Manufacturer: Signify" at 5600 VB Eindhoven, The Netherlands in its EU Declaration of Conformity), and the Philips Hue Secure Wired Camera, https://www.assets.signify.com/is/content/Signify/Assets/hue/global/20250724-philips-hue-camera.pdf (identified as "Manufacturer: Signify" at 5600 VB Eindhoven, The Netherlands in its EU Declaration of Conformity). Each such identification further demonstrates that Signify N.V., directly and through its controlled subsidiaries, is responsible for the manufacture and introduction

of these Accused Products into the stream of commerce in the United States.

24. Upon information and belief, Defendant Signify Netherlands B.V. directly and in coordination with its parent Signify N.V. and its controlled subsidiaries conducts business, has committed acts of patent infringement, and has induced acts of patent infringement by others in this District and elsewhere in the United States.

25. Upon information and belief, Defendant Signify Netherlands B.V., acting directly and through its subsidiaries, has placed and continues to place the Accused Products into the U.S. stream of commerce with knowledge and understanding that the Accused Products are, will be, and continue to be sold and offered for sale into the State of Texas. Upon information and belief, Defendants utilize established distribution channels to distribute, market, offer to sell, and sell the Accused Products, including in Texas and in this judicial district.

26. Upon information and belief, Defendant Signify Netherlands B.V. imports Signify products, including the Accused Products, into the United States for distribution and sale by U.S.-based subsidiaries of Signify N.V. and by third-party distributors. *See, e.g.*, Signify Netherlands B.V., IMPORTGENIUS.COM, https://www.importgenius.com/suppliers/signify-netherlands-b-v.

27. Upon information and belief, Genlyte Solutions, a Signify business, operates a distribution warehouse in Irving, Texas (Dallas-Fort Worth metroplex) designed to speed stock order fulfillment across the South Central and Southeast United States. *See Genlyte Solutions Opens Irving, Texas Warehouse*, EDISONREPORT.COM, https://edisonreport.com/2026/07/07/genlyte-solutions-opens-irving-texas-warehouse/ (July 7, 2026) ("This warehouse will no doubt improve our North Texas, South Central, and Southeast clients' access to core brands like Lightolier, Day-Brite, and Philips"). Through this facility and others, the Signify corporate group, including Defendants, maintains physical distribution

infrastructure in Texas through which Accused Products are or may be distributed to customers in this District and throughout the State of Texas. The Irving, Texas distribution warehouse demonstrates that Defendants and their affiliated Signify entities have made a deliberate investment in Texas-based logistics infrastructure to facilitate the distribution and sale of Signify products—including the Accused Products—to customers in this state and this judicial district. Defendants' placement of products into the stream of commerce directed at Texas is not passive or attenuated, but is supported by purposeful, ongoing capital investment in in-state distribution operations.

28. U.S. customers, including customers in Texas and in this District, can purchase Defendants' Philips Hue and WiZ brand products, including the Accused Products, through U.S. retailers with locations in this District. For example, Defendants' Philips Hue brand products are available for purchase at Home Depot, including at the Home Depot store located at 3901 Old Jacksonville Highway, Tyler, Texas 75701.




Source: HOMEDEPOT.COM, https://www.homedepot.com/p/Philips-Hue-Smart-Home-Bridge-With-Zigbee-Mesh-for-up-to-50-Lights-And-Accessories-458471/303070022

29. In addition, for example, U.S. customers can purchase Defendants' Philips Hue brand products such as Hue Secured Wired Camera, through the Home Depot store located at 1224 N Central Expy, Plano, TX 75074, as shown in the screenshot below:




Source: HOMEDEPOT.COM,
https://www.homedepot.com/s/Hue%20Secured%20Wired%20Camera?NCNI-5

30. Defendants, either directly or through controlled subsidiaries, offer "Home security plans" to camera customers in the Eastern District of Texas. https://www.philips-hue.com/en-us/explore-hue/propositions/smart-home-security/subscription-plans#Do_the_advanced_features_I_get_with_a_Secure_plan_require_a_Philips_Hue_Bridge. Signify Netherlands B.V. is the developer and seller of the Philips Hue App that enables the Home security system plans offered. *See* https://apps.apple.com/us/app/philips-hue/id1055281310. Additionally, Signify Netherlands B.V. is the developer of the Signify Interact Builder App, an AI-powered application that provides technical support and personalized guidance to users of Signify's commercial lighting systems via an integrated chatbot. *See*

https://apps.apple.com/us/app/signify-interact-builder/id1353793570.

31. Defendant Signify Netherlands B.V. promotes Signify, Phillips Hue, and WiZ products in the United States, to include in Texas and this judicial district, through the websites, http://signify.com, http://philips-hue.com, and http://wizconnected.com. The respective "Site Owner" pages of these websites identify Defendant Signify Netherlands B.V. as the site owner. *Site Owner*, SIGNIFY.COM, https://www.signify.com/en-us/site-owner; *Site Owner*, PHILIPS-HUE, https://www.philips-hue.com/en-us/support/legal/site-owner; *Site Owner*, WIZCONNECTED, https://www.wizconnected.com/en-us/support/site-owner.

32. U.S. consumers can purchase Defendants' Philips Hue and WiZ brand products, including the Accused Products, through the Philips Hue and WiZ websites, including https://www.philips-hue.com/en-us and https://www.wizconnected.com/en-us, which provide e-commerce functionality allowing consumers to purchase products directly.

33. Defendants have committed acts of direct and/or indirect patent infringement in this District, in Texas, and throughout the United States, giving rise to this action. As such, Defendants have sufficient minimum contacts with Texas such that personal jurisdiction over Defendants does not offend traditional notions of fair play and substantial justice.

34. Through offers to sell, sales, imports, distributions, and other related agreements with controlled subsidiaries, distributors, and customers operating in and maintaining a significant business presence in the United States, Defendants do business in the United States, the State of Texas, and the Eastern District of Texas. United States customers, including customers in Texas and in this District, can purchase Defendants' Philips Hue and WiZ brand products through Defendants' websites and through U.S. retailers, including retailers with locations in this District.

35. This Court has personal jurisdiction over Defendant Signify Netherlands B.V. On

information and belief, Defendant Signify Netherlands B.V.: (a) directly and in coordination with Signify N.V. and its controlled subsidiaries conducts business, has committed acts of patent infringement, and has induced acts of patent infringement by others in this District and elsewhere in the United States; (b) purposefully availed itself of the privilege of conducting activities in this state and this District, including at least part of the infringing activities alleged herein; (c) directly and in coordination with Signify N.V. and its controlled subsidiaries regularly does or solicits business, engages in other persistent conduct targeting residents of Texas, and/or derives substantial revenue from infringing goods offered for sale, sold, and imported to Texas and Texas residents; (d) places, has placed, and contributed to placing its products into the stream of commerce through established distribution channels knowing or understanding that such products would be sold and used in the United States, including in this District; (e) provides cloud services via Philips Hue Cloud as noted in the Terms of Use; provisions the Philips Hue App (a smart home application enabling monitoring and control of connected lighting and security devices) and the Signify Interact Builder App (an AI-powered application providing technical support for commercial lighting systems) in the iOS app store; and is the data controller of data stored in Philips Hue Cloud, (per the Data Privacy Notice) and in the Signify Interact Builder App (Per Signify's Privacy Notice), to residents of the State of Texas; and (f) developed and sells the Philips Hue App and Signify Interact Builder App, which are available at the Apple App Store.

36. Defendant Signify Netherlands B.V. has committed acts of direct and/or indirect patent infringement in this District, in Texas, and throughout the United States, giving rise to this action. As such, Defendant Signify Netherlands B.V. has sufficient minimum contacts with Texas such that personal jurisdiction over Defendant Signify Netherlands B.V. does not offend traditional notions of fair play and substantial justice.

37. Defendants are not residents of the United States and therefore venue is appropriate in any judicial district, including this District, pursuant to 28 U.S.C. § 1391(c)(3).

38. A substantial part of the events or omissions giving rise to the claims, including acts of direct and/or indirect infringement, occurred in this District, such that this District is also a proper venue pursuant to 28 U.S.C. § 1391(b)(2).

**THE ACCUSED PRODUCTS**

39. IoT Innovations repeats and re-alleges the allegations in Paragraphs above as though fully set forth in their entirety.

40. Based upon public information, Defendants own, operate, and/or control the websites and domains http://signify.com, http://philips-hue.com, and http://wizconnected.com, through which they advertise, sell, offer to sell, provide and/or educate customers about their products and services.

41. Defendants make, use, cause to be used, sell, offer for sale, provide, supply, and/or distribute their AI-powered chatbot solutions (including the Signify Interact Builder App – Bulbi AI-powered chatbot); their smart home ecosystem solutions (including the Philips Hue App, Hue Bridge, Hue Bridge Pro, and connected devices such as Hue Secure Contact Sensors, Hue Secure Wired Camera, Hue Battery Camera, Hue Secure Camera with Floodlight, Hue Motion Sensor, Hue smart bulbs, Hue table lamps, Hue smart plugs, Hue switches, and Hue doorbells); their lighting control gateway solutions (including the Interact System Gateway (LCN1840/05 Wireless Gateway), LCN1870 Wireless Gateway (US Version LCN1870/05), LCN1850/05 Wireless Gateway Pro, Interact Pro mobile application, compatible Interact Ready luminaires, compatible wireless sensors and switches, PDZG-E Zigbee to Ethernet Gateway, PDDEG-S Building Gateway, PDEG Ethernet Gateway, PDEB Ethernet Bridge, and PDTS Networked Touchscreen);

their WiZ connected device solutions (including the WiZ Smart Plug Gen 2 (Model No. 046677605452), WiZ Smart Plug Gen 3 x 3 (Model No. 046677605735), WiZ Outdoor Camera (Model No. 046677605483), WiZ Indoor Camera (Model No. 046677604608), WiZ Bulbs (full product line), WiZ LED Strips (full product line), WiZ TV Lights (full product line), WiZ Gradient Floor Light (Model No. 046677640040), WiZ LED Strip RGBIC 16.4ft (Model No. 046677605568), WiZ Fairy Light 6.56ft (Model No. 046677605506), WiZ Gradient Light Bars (Model No. 046677640057), WiZ Mobile Portable Light/Table Lamp (Model No. 046677604356), WiZ Pole Floor Light (Model No. 046677604349), WiZ Hero Table Lamp (Model No. 046677604080), and WiZ Squire Table Lamp (Model No. 046677604240)); and other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions (collectively, the "Accused Products"). *See* **Exhibits A–F** (Evidence of Use Charts Regarding Infringement of the Asserted Patents).

42. Defendants also instruct their customers, agents, employees, and affiliates regarding how to use the Accused Products.

43. For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

**COUNT I: INFRINGEMENT OF U.S. PATENT NO. 7,209,876**

44. Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

45. The USPTO duly issued U.S. Patent No. 7,209,876 (hereinafter, the "'876 patent") on April 24, 2007, after full and fair examination of Application No. 10/293,743, which was filed on

November 13, 2002. *See* ’876 patent at p. 1.

46. IoT Innovations owns all substantial rights, interest, and title in and to the ’876 patent, including the sole and exclusive right to prosecute this action and enforce the ’876 patent against infringers and to collect damages for all relevant times.

47. IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the ’876 patent.

48. The claims of the ’876 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of image management in a mobile network.

49. The written description of the ’876 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

50. Defendants have directly infringed the claims of the ’876 patent by using, providing, supplying, or distributing the Accused Products. As just one example, Defendants have directly infringed and continue to infringe, either literally or under the doctrine of equivalents, claim 1 of the ’876 patent, as detailed in the Evidence of Use attached as Exhibit A. As shown in Exhibit A, Defendants, through the use and provision of the Accused Products, perform a method for producing answers to a question or query issued to an information repository containing natural language data, executable in a computer system, comprising the steps of: a. receiving a search

question or query containing at least one variable expression, said at least one variable expression being representative of desired answer data that is to be searched for in said information repository; b. initiating a search of said information repository for information containing terms present in said search question or query and receiving a first data set comprising information containing terms present in said search question or query; c. searching said first data set for answer phrases present in syntactically similar form to said search question or query and containing answer data which may replace said variable expression to provide an answer to said search question or query, and retrieving answer phrases resulting from such search; and d. modifying said answer phrases and providing output derived from said answer phrases in the form of one or more direct answers to said search question or query.

51. IoT Innovations has been damaged as a result of the infringing conduct by Defendants as alleged above. Thus, Defendants are liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT II: INFRINGEMENT OF U.S. PATENT NO. 7,280,830**

52. Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

53. The USPTO duly issued U.S. Patent No. 7,280,830 (hereinafter, the "'830 patent") on October 9, 2007 after full and fair examination of Application No. 10/859,735 which was filed on June 2, 2004. *See* '830 patent at p. 1.

54. IoT Innovations owns all substantial rights, interest, and title in and to the '830 patent, including the sole and exclusive right to prosecute this action and enforce the '830 patent against infringers and to collect damages for all relevant times.

55. IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the ’830 patent.

56. The claims of the ’830 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of automatic registration of a new device through the establishment of a home relationship with a network server.

57. The written description of the ’830 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

58. Defendants have directly infringed the claims of the ’830 patent by using, providing, supplying, or distributing the Accused Products. As just one example, Defendants have directly infringed and continue to infringe, either literally or under the doctrine of equivalents, claim 1 of the ’830 patent, as detailed in the Evidence of Use attached as Exhibit B. As shown in Exhibit B, Defendants, using the Accused Products and their associated hardware and software and functionalities, perform a method for automatic registration of a new wireless device with a registration server, comprising: establishing a home relationship between the new wireless device and a network server, such that no additional configuration is required by a user of the new device to communicate over a network once the relationship is established, wherein establishing a home relationship includes, determining at the network server, that the wireless device is an owned device, wherein the owned device is previously known to the network server; automatically

obtaining registration information for the new device; establishing a connection between a registration server and the network server; and sending the registration information from the network server to the registration server.

59. IoT Innovations has been damaged as a result of the infringing conduct by Defendants as alleged above. Thus, Defendants are liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT III: INFRINGEMENT OF U.S. PATENT NO. 7,593,428**

60. IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

61. The USPTO duly issued U.S. Patent No. 7,593,428 (hereinafter, the "'428 patent") on September 22, 2009, after full and fair examination of Application No. 11/621,545 which was filed on January 9, 2007. *See* '428 patent at p. 1.

62. IoT Innovations owns all substantial rights, interest, and title in and to the '428 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

63. IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '428 patent.

64. The claims of the '428 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function, operation, and security of data communications by selectively providing extended checksum protection to data packets

communicated between communication stations, enabling more reliable and secure transmission of data across networks.

65. The written description of the ’428 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

66. Defendants have directly infringed the claims of the ’428 patent by using, providing, supplying, or distributing the Accused Products. As just one example, Defendants have directly infringed and continue to infringe, either literally or under the doctrine of equivalents, claim 14 of the ’428 patent, as detailed in the Evidence of Use attached as Exhibit C. As shown in Exhibit C, Defendants, using the Accused Products and their associated hardware and software and functionalities, perform a method comprising: receiving data from a data source at a transceiver station; and in response to programmed instructions in processing circuitry at the transceiver station; selecting a first portion of the data to be protected by a first checksum and selecting a second portion of the data to be protected by a second checksum; performing a first checksum calculation upon the selected first portion and performing at least a second checksum calculation upon the selected second portion; and formatting the data into a packet-formatted data packet, wherein the packet-formatted data packet comprises the selected first portion, indicia associated with the first checksum calculation, the selected second portion, and indicia associated with the second checksum calculation.

67. IoT Innovations has been damaged as a result of the infringing conduct by Defendants as alleged above. Thus, Defendants are liable to IoT Innovations in an amount that compensates

it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 8,972,576**

68. IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

69. The USPTO duly issued U.S. Patent No. 8,972,576 (hereinafter, the "'576 patent") on March 3, 2015 after full and fair examination of Application No. 10/833,381 which was filed on April 28, 2004. *See* '576 patent at p. 1.

70. IoT Innovations owns all substantial rights, interest, and title in and to the '576 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

71. IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '576 patent.

72. The written description of the '576 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

73. The claims of the '576 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components and functionalities that improve upon the function, operation, and security of communications devices and networks by employing an improved network protocol that enables

the establishment of a known, persistent relationship between a mobile wireless device and a wireless network that allows the device to communicate over the network absent further configuration once the relationship has been established.

74. Defendants have directly infringed the claims of the ’576 patent by using, providing, supplying, or distributing the Accused Products.

75. As just one example, Defendants have directly infringed and continue to infringe, either literally or under the doctrine of equivalents, claim 1 of the ’576 patent, as detailed in the Evidence of Use attached as Exhibit D. As shown in Exhibit D, Defendants, using the Accused Products and their associated hardware and software and functionalities, perform a method for establishing a relationship between a mobile device and a server in a network, comprising; (a) detecting the presence of the mobile device; (b) in response to determining that the mobile device is unrecognized, automatically notifying a network administrator; (c) in response to receiving authorization from the network administrator to establish the relationship, requesting authorization from the mobile device to authorize the establishment of the relationship; and (d) establishing the relationship between the mobile device and the network in response to receiving the authorization from the mobile device, such that no additional configuration is required by the mobile device to communicate over the network once the relationship has been established.

76. IoT Innovations has been damaged as a result of the infringing conduct by Defendants as alleged above. Thus, Defendants are liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT V: INFRINGEMENT OF U.S. PATENT NO. 7,246,173**

77. Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully

set forth in their entirety.

78. The USPTO duly issued U.S. Patent No. 7,246,173 (hereinafter, the "'173 patent") on July 17, 2007, after full and fair examination of Application No. 09/834,918, which was filed on April 16, 2001. *See* '173 patent at 1.

79. IoT Innovations owns all substantial rights, interest, and title in and to the '173 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

80. The claims of the '173 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of IP data classification systems and methods in packet switch networks.

81. The written description of the '173 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

82. Defendants have directly infringed one or more claims of the '173 patent by using, providing, supplying, or distributing the Accused Products.

83. Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '173 patent, as detailed in Exhibit E.

84. For example, as detailed in Exhibit E, the installation and use of the Accused Products, including but not limited to the Interact System Gateway (LCN1840/05 Wireless Gateway), performs a method of classifying Internet Protocol (IP) data to be sent from a source apparatus to

a destination apparatus in a packet switched network, said method comprising: receiving said data at a first node, the data comprising a header comprising a list of at least one intermediate node to be visited on a way to the destination apparatus; and classifying said data at said first node based on an entry in said header.

85. IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '173 patent.

86. IoT Innovations has been damaged as a result of the infringing conduct by Defendants as alleged above. Thus, Defendants are liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT VI: INFRINGEMENT OF U.S. PATENT NO. RE44,742**

87. Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

88. The USPTO duly issued U.S. Patent No. RE44,742 (hereinafter, the "'742 patent") on February 4, 2014 after full and fair examination of Application No. 13/542,351 which was filed on July 5, 2012. *See* '742 patent at 1. The '742 patent is a reissue of U.S. Patent No. 7,751,533. *See id.* at 12.

89. IoT Innovations owns all substantial rights, interest, and title in and to the '742 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

90. IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one

or more claims of the ’742 patent.

91. The written description of the ’742 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

92. The claims of the ’742 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting template-based messaging systems.

93. Defendants have directly infringed the claims of the ’742 patent by using, providing, supplying, or distributing the Accused Products.

94. As just one example, Defendants have directly infringed and continue to infringe, either literally or under the doctrine of equivalents, claim 1 of the ’742 patent, as detailed in the Evidence of Use attached as Exhibit F. As shown in Exhibit F, Defendants, using the Accused Products and their associated hardware and software and functionalities, perform a method comprising determining, by a processing device, a message to be generated from a message template; automatically populating, by the processing device, a dynamic field of the message template with message context data in response to the determination; and sending, by the processing device, the message having the message context data in the dynamic field of the message template to a remote device.

95. IoT Innovations has been damaged as a result of the infringing conduct by Defendants as alleged above. Thus, Defendants are liable to IoT Innovations in an amount that compensates

it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

96. IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. IoT Innovations has and will continue to suffer this harm by virtue of Defendants' infringement of the '742 patent. Defendants' actions have interfered with and will interfere with IoT Innovations' ability to license technology. The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology. The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

97. Defendants had knowledge of the '742 patent at least as of the date when they were notified of the filing of this action.

98. Upon information and belief, Defendants have also indirectly infringed one or more claims of the '742 patent by inducing others to directly infringe said claims.

99. Defendants have induced end-users, including, but not limited to, Defendants' employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '742 patent by providing or requiring use of the Accused Products.

100. Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '742 patent, including, for example, claim 1 of the '742 patent.

101. Such steps by Defendants included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing

ongoing instructional and technical support to customers on how to use the Accused Products in an infringing manner.

102. Defendants are performing these steps, which constitute induced infringement with the knowledge of the '742 patent and with the knowledge that the induced acts constitute infringement.

103. Defendants are aware that the normal and customary use of the Accused Products by others would infringe the '742 patent.

104. Defendants' inducement is ongoing.

105. Upon information and belief, Defendants have also indirectly infringed by contributing to the infringement of the '742 patent.

106. Defendants have contributed to the direct infringement of the '742 patent by their personnel, contractors, and customers.

107. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '742 patent, including, for example, claim 1 of the '742 patent. The special features constitute a material part of the invention of one or more of the claims of the '742 patent and are not staple articles of commerce suitable for substantial non-infringing use. In fact, as shown in Exhibit F, the primary purpose of the Accused Products is to act and operate in a way that infringes the '742 patent.

108. Defendants' contributory infringement is ongoing.

109. Furthermore, on information and belief, Defendants have a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of IoT Innovations' patent rights.

110. Defendants' actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendants.

111. Defendants' direct infringement of one or more claims of the '742 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of IoT Innovations' rights under the patent.

**JURY DEMAND**

112. IoT Innovations hereby requests a trial by jury on all issues so triable by right.

**PRAYER FOR RELIEF**

113. IoT Innovations requests that the Court find in its favor and against Defendants, and that the Court grant IoT Innovations the following relief:

a. Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendants or others acting in concert therewith;

b. A permanent injunction enjoining Defendants and their officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '742 patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of said patents by such entities;

c. Judgment that Defendants account for and pay to IoT Innovations all damages to and costs incurred by IoT Innovations because of Defendants' infringing activities and other conduct complained of herein;

d. Judgment that Defendants' infringements be found willful as to the '742 patent, and that the Court award treble damages for the period of such willful infringement

pursuant to 35 U.S.C. § 284;

e. Pre-judgment and post-judgment interest on the damages caused by Defendants' infringing activities and other conduct complained of herein;

f. That this Court declare this an exceptional case and award IoT Innovations its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g. All other and further relief as the Court may deem just and proper under the circumstances.

Dated: August 23, 2026

Respectfully submitted,

*/s/ C. Matthew Rozier*

C. Matthew Rozier (CO 46854)*
**ROZIER HARDT MCDONOUGH PLLC**
1500 K Street, 2nd Floor
Washington, District of Columbia 20005
Telephone: (404) 779-5305; (202) 316-1591
Email: matt@rhmtrial.com

Jonathan L. Hardt (TX 24039906)*
**ROZIER HARDT MCDONOUGH PLLC**
712 W. 14th Street, Suite A
Austin, Texas 78701
Telephone: (210) 289-7541
Email: hardt@rhmtrial.com

James F. McDonough, III (GA 117088)*
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866
Email: jim@rhmtrial.com

***Attorneys for Plaintiff IOT INNOVATIONS LLC***

* admitted to the Eastern District of Texas

**Exhibits**

A. Evidence of Use Chart for U.S. Patent No. 7,209,876
B. Evidence of Use Chart for U.S. Patent No. 7,280,830
C. Evidence of Use Chart for U.S. Patent No. 7,593,428
D. Evidence of Use Chart for U.S. Patent No. 8,972,576
E. Evidence of Use Chart for U.S. Patent No. 7,246,173
F. Evidence of Use Chart for U.S. Patent No. RE44,742